# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Timothy O'Brien xx/xx/1989<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) Case No. 20-864M (NJ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 13, 2020__ in the county of __Kenosha__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Delivery of controlled substances |

This criminal complaint is based on these facts:

Please see attached

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Ricky Connors
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 16, 2020

_____
*Judge's signature*

Honorable Nancy Joseph
*Printed name and title*

City and state: Milwaukee, Wisconsin

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTER DISTRICT OF WISCONSIN

## AFFIDAVIT FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

1. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over 4 and 1/2 years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two (2) bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

2. I have received training in the investigation of firearms trafficking, and I work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. Based on my training, experience, and participation in firearms trafficking investigations, I know and/or have observed the following:

- I have utilized informants to investigate firearms trafficking. Through informant interviews and debriefings of individuals involved in firearms trafficking, I have learned about the manner in

1

which individuals and organizations distribute firearms in Wisconsin;

- I have also relied on informants to obtain firearms from individuals on the streets (as opposed to licensed gun dealers), known as a controlled purchase;

- I have experience conducting street surveillance of individuals engaged in firearms trafficking. I have participated in the execution of numerous search warrants where firearms, ammunition, magazines, and firearms cases have been seized;

- I am familiar with the language utilized over the telephone to discuss firearms trafficking, and know that the language is often limited, guarded, and coded;

- I know that firearms traffickers often use electronic equipment, wireless and land-line telephones, and pagers to conduct firearms trafficking operations;

- I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

- I know that firearms traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate firearms trafficking;

2

- I know that firearms traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearms traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials; and

- I know that firearms traffickers often use online firearms brokerage websites, such as "Armslist," to obtain firearms. I know that individuals who utilize "Armslist," will contact other users of the site regarding the sale of firearms via electronic mail (hereinafter referred to as EMAIL) and exchange phone numbers. Individuals then discuss price and meet up locations to exchange money for the firearms by phone. Individuals are not required to complete background checks through "Armslist," and individuals often do not check to see if the person to whom they are transferring the firearm is a convicted felon.

- I know that firearms traffickers will utilize social media platforms to meet individuals and sell firearms. Most social media platforms have groups intended to bring together common minded individuals for the purpose of sale and acquisition of firearms. I am aware that Facebook in particular has been utilized to broker firearms deals.

3. I have participated in several firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones,

3

cameras, and other digital storage devices. In many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

4. Furthermore, Affiant knows from training and experience it is common for drug users, drug dealers, firearms traffickers, and firearms straw purchasers to communicate via cellular phone through a variety of electronic media. It also common for firearm traffickers and straw buyers to communicate through cellular phones and electronic media. Many times drug dealers also act as firearms traffickers by utilizing the non-prohibited status (no felony convictions) of drug users to obtain firearms. In turn, these firearms are used by the drug trafficking organization to protect and secure their goods and territory. The participants in these organizations can use text (SMS) messaging, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook or Twitter.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. I respectfully submit that there is probable cause to believe that on or about January 13, 2020, Timothy O'Brien committed crimes in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

4

## PROBABLE CAUSE

7. On September 20, 2017, Affiant obtained a Federal Search warrant for the content of the Facebook page "TJ O'Brien," with a corresponding Facebook ID of 1373617493. The Facebook report for the page "TJ O'Brien" covered the dates of 01/01/2015 through 09/20/2017.

8. Throughout the analysis of the Facebook page "TJ O'Brien", several posts were located discussing the sale and trade of firearms. The page "TJ O'Brien" also contains several conversations documenting the consumption and sale of marijuana.

9. Throughout the Facebook page "TJ O'Brien," there were approximately twenty-one (21) conversations detailing the sale and consumption of marijuana. These posts occurred between 06/02/2015 and 08/18/2017.

### CONTROLLED PURCHASES

10. During the investigation we have conducted multiple "controlled buys." Based on my training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs, firearms or other items from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets cases agents at a pre-determined meet location and gives the purchased drugs, firearms or other purchased items and the recording/monitoring equipment to the case agents. The informant is again searched for

contraband, weapons, and money and then interviewed by the case agents about the transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. Ideally, all of the calls to the target by the informants are consensually recorded calls under the direction and control of case agents and made in the presence or direction of case agents. Additionally, case agents typically observe the informants dial the target's number on each occasion. On occasion, it is not feasible or safe to record and monitor a telephone call made to a target. Typically, these unrecorded calls are last minute adjustments or very short calls to indicate arrival, departure or other less significant issues. Unless otherwise noted, the controlled buys and telephone contacts summarized below were conducted pursuant to the above procedures. The controlled buys conducted with OBRIEN are outlined below.

11. Beginning in June 2018, the affiant interviewed an ATF Confidential Informant (herein referred to as "CI") regarding OBRIEN. The CI was shown a photograph of OBRIEN from WI Department of Transportation Driver's License # O165-8108-91-6306 (image date: 05/11/2017). The CI positively identified the individual in the photograph as "TJ" (Facebook name of Timothy OBRIEN) the individual he/she knew to sell marijuana. Additionally, the CI stated he/she believed he sold the male in the photograph a firearm.

12. For several reasons, case agents believe that the CI is reliable and credible. First, CI has been providing continuous information since June 2018. Second, the information provided by CI is consistent with evidence obtained elsewhere in this investigation where

6

CI was not utilized, and substantial portions of CI's information have been corroborated through independent investigation, including surveillance and information from other sources. Third, the CI has made statements to case agents that are against his/her penal interests, in that the CI has admitted his/her involvement in the sale of firearms and narcotics in the past. Finally, the CI has had an adequate opportunity to observe directly the events discussed and/or has heard conversations directly from the individuals discussed herein. The CI is cooperating in exchange for credit in an ongoing investigation in which he/she is a suspect. The CI utilized in this investigation has no known criminal convictions. Investigators when possible independently corroborated information provided by the CI. Whenever possible text messages between the CI and OBRIEN were monitored, recorded and documented by agents. All meetings between the CI and OBRIEN were monitored, recorded and documented by agents.

13. Your affiant is aware of three controlled purchases conducted from Timothy OBRIEN. All of the below controlled buys were arranged via OBRIEN's Facebook account. The CI would contact OBRIEN via OBRIEN's Facebook messenger to coordinate the amounts of marijuana to be purchased, total price for the drugs, and location for the drug deal. Facebook messenger can be accessed through a variety of electronic devices, including cellphones and computers.

14. In October 2018, the ATF Milwaukee Field Office conducted a controlled purchase of suspected marijuana from Timothy OBRIEN. On that day, the ATF CI purchased fourteen (14) grams of green leafy substance from OBRIEN for $180.00. The substance field tested positive for the presence of THC. The purchase occurred at

OBRIEN's former residence located at 6848 29th Avenue, Kenosha, WI. An ATF undercover agent observed OBRIEN meet with the CI in the front of the residence and immediately recognized OBRIEN and later identified OBRIEN from observing state of Wisconsin Department of Transportation photographs.

15. In March 2019, the ATF CI conducted a controlled purchase from OBRIEN. The purchase occurred out front of OBRIEN's residence located at 6848 29th Avenue, Kenosha, WI. On that day, the ATF CI purchased seven (7) grams of suspected marijuana for $80.00. An ATF undercover agent observed OBRIEN meet with the CI. The green leafy substance field tested positive for the presence of THC. During the interaction, OBRIEN made several statements referring that he was a "gun guy." All statements were video and audio recorded.

16. On or about January 13, 2020, the ATF CI conducted a controlled purchase from OBRIEN. OBRIEN instructed the CI to 9022 25th Avenue, Kenosha, WI, once he/she arrived OBRIEN instructed the CI to enter the residence. At that location, OBRIEN sold the CI 14.1 grams of suspected marijuana for $140.00. OBRIEN's marijuana and a firearm were inside of the residence. The green leafy substance field tested positive for the presence of THC. During the interaction, OBRIEN displayed an AR-15 style rifle to the CI. Additionally, OBRIEN made several comments about the effectiveness of the marijuana and how it would make one feel, indicating he is a user of marijuana. An ATF undercover agent observed OBRIEN at the door of this residence. OBRIEN indicated he moved into the residence in the summer of 2019.